**Clemens HROUDA, et al.**

v.

**TOWN OF HOLLIS, et al.**

Supreme Judicial Court of Maine.

Argued Nov. 14, 1989.
Decided Jan. 8, 1990.

William L. Plouffe (orally), Drummond, Woodsum, Plimpton & MacMahon, Portland, for plaintiff.

David D. Farrar (orally), Professional Resource Associates, P.A., Catherine O'Connor, Bernstein, Shur, Sawyer & Nelson, Portland, Glenn R. Anderson, Hollis, for defendant.

Before ROBERTS and WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

ROBERTS, Justice.

Clemens Hrouda appeals from a judgment of the Superior Court, (York County, *Perkins, J.*), affirming a decision by the Planning Board of the Town of Hollis to permit an office and truck maintenance facility in a rural three acre zone. Because we agree with the defendants that the facility is a conditional use permitted under Section 5.3.4(18), (20), and (21) of the Hollis Zoning Ordinance, and we agree that the

Board properly considered all aspects of the project, we affirm the judgment.

Heatley's Line Construction of Maine, an electric power line construction, maintenance and repair company, proposes to locate a motor vehicle maintenance and valve repair facility on 35 acres in Hollis. The two story, 29,000 square foot building would include 3,000 square feet of offices. The remaining area is devoted to a work area and machine shop for painting and repairing trucks, and an area for repairing and refitting steam valves. Hollis has no public water or sewer system, so waste water will be discharged into a septic system and leach field. All floor drains will discharge into an oil/water separator prior to discharge into the septic system.

The Board determined that the project fit within Section 5.3.4(18), (20), and (21) of the ordinance,[1] and approved the project subject to conditions. Hrouda, who opposed the project, sought judicial review pursuant to 30 M.R.S.A. § 2411(3)(F) (Pamph.1988)[2] and M.R.Civ.P. 80B, challenging the project's adverse effects on traffic flow, groundwater quality and property values. The court affirmed the Board's decision, finding "substantial evidence" before the board to support its decision. We agree.

The court must give undefined terms their common and generally accepted meaning unless the context clearly indicates otherwise. *George D. Ballard, Builder, Inc. v. City of Westbrook,* 502 A.2d 476, 480 (Me.1985). Section 18 allows "gas stations, machinery and vehicle sales, service, washing, repair facilities." Contrary to Hrouda's contention, the common interpretation of such a section indicates an intention to list the representative services that such a facility would encompass, rather than require the facility to offer all such

1. Section 5.3.4(18), (20), and (21) of the Town Ordinance states:

5.3.4 *Conditional Uses and Structures*

. . . . .

18. Gas stations, machinery and vehicle sales, service, washing, repair facilities on parcels with direct access to a state aid highway.

. . . . .

20. Fabricating, manufacturing, light industrial activities and facilities with direct access to a state aid highway.
21. Uses similar in character to those listed above, temporary uses, and accessory uses and structures are permitted.

2. Effective February 28, 1989, this statute is codified at 30–A M.R.S.A. § 2691(3)(G) *see* P.L. 1987, ch. 737, pt. C, § 106, amended by P.L. 1989, ch. 9, § 2 and ch. 104, pt. C, §§ 8 and 10.

services. The court properly adopted an interpretation that did not require reading additional words into the provision. Moreover, the Board received evidence of the nature of the valve repair operation, including pictures of the machinery to be used. The court properly concluded that evidence supported the conclusion that the facility would be engaged in light industrial activity within the meaning of section 20.

 Hrouda also argues that the Board inadequately assessed the project's impact on water contamination and traffic generation. The ability "to draw 'two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *In re Maine Clean Fuels, Inc.,* 310 A.2d 736, 741 (Me.1973) (quoting *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966)). Substantial evidence is defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Edison Co. v. Labor Board,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Where substantial evidence supports the result reached by an administrative agency, a court will not disturb the result. *Id.*

The Department of Environmental Protection evaluated the septic system's design and required a review by a licensed site evaluator, who found no violation. Additionally, the Board conditioned approval on extensive monitoring provisions and required a surety bond to cover any damage. Heatley's also switched to a solvent that the manufacturer claims is non-flammable and biodegradable. The court correctly determined the Board had sufficient evidence of the project's protection of water resources.

Although no traffic study was made to show the impact of the project on local traffic levels, the Board followed the ordinance's requirements in considering traffic effects. Discussion of the site's traffic generation occurred at a Board meeting. Additionally, the Board conditioned approval on Heatley's obtaining Department of Transportation approval of the driveway

entrance permit. There was no need to condition approval on a traffic generation study, as Hrouda suggests.

Finally, the Board properly rejected Hrouda's argument that the office space was not an accessory use permitted under Section 5.3.4(21). Accordingly, we affirm the Superior Court judgment.

The entry is:

Judgment affirmed.

All concurring.